**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

REBECCA BRADLEY, et al

    Plaintiff,

vs                                                 Case No: 03-71551
                                                     Honorable Victoria A. Roberts

NORTHWEST AIRLINES, INC.,

    Defendant.

and

NORTHWEST AIRLINES, INC.,

    Third Party Plaintiff,

vs

LSG SKY CHEFS, INC.,

    Third Party Defendant.
_____/

## OPINION AND ORDER

**I.    INTRODUCTION**

    This matter is before the Court on Sky Chefs' Motion for Judgment on the Pleadings and Summary Judgment [Doc. 58], and Northwest Airlines' Cross Motion for Summary Judgment [Doc. 63]. For the reasons stated, the Court GRANTS, in part, and DENIES, in part, Sky Chefs' Motion for Judgment on the Pleading and Motion for Summary Judgment. The Court DENIES Northwest's Cross Motion for Summary Judgment. The parties shall also file additional briefing as outlined in Section IV(D)(3)(c) of this Opinion and Order.

## II.    BACKGROUND

Rebecca Bradley ("Plaintiff"), an employee of Sky Chefs, Inc. a/k/a LSG Sky Chef ("Sky Chefs"), alleges that she was injured while loading a mix kit[1] owned by Northwest Airlines, Inc. ("Northwest") onto a DC-9 aircraft.  The incident occurred in the course of Plaintiff's employment with Sky Chefs, which entered into a Catering Agreement with Northwest.  In her complaint, Plaintiff alleges that she sustained torn ligaments and cartilage in her left wrist while loading the mix kit onto the aircraft.  Pl. 1st Amd. Cmplt. at ¶¶ 11, 19.

Plaintiff and her husband, Ronald Bradley, filed suit based on diversity jurisdiction in this Court on April 21, 2003, against Northwest.  The complaint alleges negligence and loss of consortium.[2]  On March 18, 2004, Northwest filed a third party complaint against Sky Chefs seeking recovery under five theories of liability: (1) common law indemnity; (2) implied contractual indemnity; (3) express contractual indemnification; (4) restitution for breach of contract; and (5) breach of contract for failure to provide liability insurance coverage.

In December 2004, Sky Chefs filed a Motion for Judgment on the Pleadings and a Motion for Summary Judgment.  Northwest filed a Cross Motion for Summary Judgment against Sky Chefs.

In its Motion for Judgment on the Pleadings, Sky Chefs contends:

---

[1] A mix kit is a metal container accessed through the front door, with interior drawers which are to be filled with beverages.

[2] The complaint was later amended to add Driessen Services, Inc., but the claim against Driessen was dismissed on February 7, 2005.

(1) The Complaint filed against Northwest alleges active negligence, thereby barring its recovery against Sky Chefs for indemnification; and

(2) Under Michigan law, which governs Plaintiff's underlying claim, liability is "several," not joint, and Northwest cannot be held liable for Sky Chefs' negligent conduct against the Plaintiff. Therefore, Northwest is not entitled to indemnity.

With respect to its Motion for Summary Judgment, Sky Chefs argues that the Catering Agreement provides that Sky Chefs must indemnify Northwest only for its (Sky Chefs') negligence. Further, Sky Chefs contends that Northwest had an obligation under the Catering Agreement to supply proper equipment so that Sky Chefs could perform its catering duties, and Northwest's failure to provide a proper space for the mix kits caused Plaintiff's injuries. Under this situation, argues Sky Chefs, it should not be required to indemnify Northwest for the airline's own failings. Further, Sky Chefs contends that the Catering Agreement limits Northwest's damages to "credits" if Sky Chefs loads damaged equipment. Sky Chefs also contends that it has not breached the Catering Agreement.

On the other hand, Northwest asserts that the Catering Agreement unambiguously provides for indemnification; that Sky Chefs was solely negligent here; Sky Chefs breached its contractual duties to inspect, notify Northwest of needed repairs, and to name Northwest as an additional named insured.

### III. STANDARD OF REVIEW

#### A. Judgment on the Pleadings

At any time after the pleadings close, but before trial commences, a party may move for a judgment on the pleadings. See Fed. R. Civ. P. 12(c). The standard of review is the same de novo standard applicable to a motion to dismiss brought pursuant

to Fed. R. Civ. P. 12(b)(6). *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001 ).

The Court reviews the motion in the light most favorable to the plaintiff, assumes that the plaintiff's factual allegations are true, and determines whether the plaintiff undoubtedly can prove no set of facts in support of her claims that would entitle her to relief. *Id.* This standard of review "'requires more than the bare assertion of legal conclusions.'" *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (*quoting Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The Court need not accept as true legal conclusions or unwarranted factual inferences. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

B. Summary Judgment

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Snyder v. AG Trucking Co.*, 57 F.3d 484, 488 (6th Cir. 1995). To meet this burden, the movant may rely on any of the evidentiary sources listed in Rule 56(c). *Cox*, 53 F.3d at 149. Alternatively, the movant may meet this burden by pointing out that the nonmoving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case, and on which that party will bear the burden of proof at trial. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937 (6th Cir. 1995); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989). The moving party does not, however, have to support its motion for summary judgment with evidence negating its opponent's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

Once the moving party has met its burden, the burden shifts to the nonmoving party to produce evidence of a genuine issue of material fact. Rule 56(e); *Cox*, 53 F.3d at 150. The nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint. *Copeland*, 57 F.3d at 479. The mere existence of a scintilla of evidence to support the nonmoving party position will be insufficient; there must be evidence on which a jury could reasonably find for the nonmoving party. *Snyder*, 57 F.3d at 488; *Tolton*, 48 F.3d at 941.

Pursuant to Rule 56(f), if a party is unable to present facts essential to justify the party's opposition to a motion for summary judgment because of limited, or a lack of, discovery, the party must file an affidavit detailing the discovery needed, or, in the alternative, the party may file a motion for additional discovery. *Wallin v. Norman*, 317 F.3d 558, 564 (6th Cir. 2003) (citing *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 627 (6th Cir. 2002) ("[T]he non-movant *must* file an affidavit

pursuant to Fed. R.Civ.P. 56(f) that details the discovery needed, or file a motion for additional discovery.") (emphasis added).  "[T]he district court may permit further discovery so that the nonmoving party can adequately oppose the motion for summary judgment."  *Wallin*, 317 F.3d at 564.  Ultimately, "it is up to the party opposing the motion to state why more discovery is needed."  *Id.*

**IV.   APPLICABLE LAW AND ANALYSIS**

   ***A.     Minnesota Law Applies***

A federal court sitting in diversity must apply the law of the forum state, including its choice of law rules.  *Automotive Logistics Productivity Improv. Syst. Inc. v. Burlington Motor Carriers, Inc.*, 986 F.Supp. 446, 447-448 (E.D. Mich. 1997); *see Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1942).  The Michigan Supreme Court recognizes the validity of contractual choice of law clauses if: (1) there is a reasonable relationship between the chosen state and the transaction, and (2) its enforcement would not offend public policy considerations.  *Automotive Logistics*, 986 F.Supp. at 448 (*citing Snider v. Lone Star Art Trading Co., Inc.*, 672 F.Supp. 977, 982 (E.D. Mich. 1987), *aff'd*, 838 F.2d 1215 (6th Cir. 1988)).

The Northwest/Sky Chefs contract states:

> This Agreement shall be deemed to have been made in the State of Minnesota, U.S.A., and shall be interpreted, and the rights and liabilities of the parties hereto determined in accordance with the law of the State of Minnesota, U.S.A., without regard to conflict of law principles.

Catering Agreement, Northwest Airlines, Inc. and LSG Lufthansa Service/Sky Chefs ("Catering Agreement"), p. 29, ¶ 29.7 Applicable Law and Venue.

A reasonable relationship exists between the contract and the State of

Minnesota. Northwest has its principle place of business in Minnesota. The contract was formed in Minnesota. Sky Chefs does not contend that it did not freely enter into a contract with a corporation having its principle place of business in Minnesota. Neither party contends that applying Minnesota law to the contract would contravene any public policy set by the State of Michigan. Therefore, the Court will enforce the choice of law provision in the contract. *See Automotive Logistics*, 986 F.Supp. at 448.[3]

### B. *Indemnification Clause*

Under Minnesota law, indemnification provisions are generally governed by the rules employed when reviewing contracts. *Chicago, Milwaukee, St. Paul & Pacific Railroad Co. v. Famous Brands, Inc.*, 324 F.2d 137, 140 (8th Cir. 1963). Thus, where there is no ambiguity, the interpretation of a contract is a question of law. *City of Virginia v. Northland Office Properties Ltd. Partnership*, 465 N.W.2d 424, 427 (Minn. App. 1991); *Wolfson v. City of St. Paul*, 535 N.W.2d 384, 386 (Minn. App. 1995). However, where there is ambiguity, the contract's interpretation is a question of fact. *Id.* Whether or not a contract is ambiguous is a legal determination. *Blattner v. Forster*, 322 N.W.2d 319, 321 (Minn. 1982).

When interpreting a contract, it is read in its entirety and considered in the light of the subject matter, the object and purpose of the parties, and the natural meaning of the language used so that the contract's provisions are "made to harmonize and unite in a

---

[3] It should be noted that it is unchallenged that Michigan law applies to Plaintiff's underlying claim. Minnesota law only applies to the indemnification and contract related claims between Northwest and Sky Chefs. Additionally, this Court's procedural rules and precedent control even when applying another jurisdiction's substantive law in a diversity suit. *Arms v. State Farm Fire & Cas. Co.*, 731 F.2d 1245, 1248 n.2 (6th Cir. 1984).

consistent agreement in consonance with the intention of the parties." *Independent School District No. 877 v. Loberg Plumbing and Heating Co.*, 266 Minn. 426, 436 (1963).  Where a contract contains ambiguous terms or the intent is doubtful, the terms are construed against the author.  *Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 66 (Minn. 1979).

The court need not resort to rules of strict construction where there is no ambiguity in the language of the agreement. *See Carl Bolander & Sons, Inc. v. United Stockyards Corp.*, 298 Minn. 428, 433 (1974) (noting that where language may be interpreted according to its plain meaning, there is no room for construction).

Importantly, indemnity agreements should not be given an unduly liberal or harshly strict construction, but should be given a fair construction that will accomplish their stated purposes.  *Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 324 F.2d at 140.

The indemnification clause states:

28.1 Indemnification. Seller [Sky Chefs] shall indemnify buyer [Northwest] and buyer shall indemnify seller in respect to any and all damages, liabilities, claims, losses and expenses (including reasonable fees and disbursements of counsel and court costs, whether prior to or at trial or in appellate proceedings and including all such costs incurred in establishing the right to indemnification) which may be incurred by a party, arising out of:

28.1.1 Any breach of the respective representations, warranties, covenants or agreements made in this agreement.

28.1.2 Any action, suit, proceeding, assessment or judgment relating to any of the matters indemnified against in this Section 28.

28.1.3 Any death, personal injury, or property damage caused by their respective negligence.

Catering Agreement, p. 26, ¶ 28.1 Indemnification.  The parties and the Court agree

Page 8 of 20

that the language is unambiguous. Sky Chefs Mo. at p. 15; Northwest Cross Mo. at p. 6.[4] Therefore, the interpretation of the contract is a question of law. *City of Virginia*, 465 N.W.2d at 427.

Having said that, and for the reasons stated below, the Court finds that, as a matter of law, the two provisions at issue– 28.1.1 and 28.1.3– provide for indemnification, but not for a party's own negligence.

### C. *Sky Chefs' Motion For Judgment on the Pleadings*

      1.    Northwest's Common Law [Count I] and Implied Contractual Indemnity [Count II] Claims Fail As A Matter of Law

In *Art Goebel, Inc., v. North Suburban Agencies, Inc.*, 567 N.W.2d 511 (Minn. 1997), the Minnesota Supreme Court stated that contracts including unambiguous indemnity clauses provide exclusive indemnification remedies for the parties. The Court found the unambiguous and explicit language in the contract outlining the scenarios in which one party would indemnify the other "impliedly excluded all other scenarios." *Id.* at 516. The Court continued:

> When the parties' intention is totally ascertainable from the written contract, there is no room to construe the contract differently and this court will not remake the contract. *Anderson v. Twin City Rapid Transit Co.*, 250 Minn. 167, 176 (1957).

*Id.*

As noted, *supra*, the Catering Agreement's indemnity clause specifically outlines the situations in which indemnification is available. Therefore, Northwest's claims based on common law indemnity (Count I) and implied indemnity (Count II) fail as a matter of

---

      [4] Northwest's brief does not comply with Local Rule 5.1(a) of the Eastern District of Michigan: it fails to consecutively number the pages. The Court's citation to Northwest's brief assumes that the page numbering begins at the introduction.

law.

### 2. Northwest Has Sufficiently Stated A Claim Under the Agreement's Indemnification Clause

The Catering Agreement provides indemnification for damages, liabilities, claims, losses and expenses arising from three situations, as outlined above. Catering Agreement 28.1.1 - 28.1.3.

In Count III of the Third Party Complaint, Northwest alleges that Sky Chefs had a duty pursuant to the contract to conduct its operation in a safe, careful, prudent and reasonable manner so as to not impose liability on Northwest. Third Pty. Cmplt. at ¶ 23. Northwest also alleges that "the allegations of negligence contained in the principal plaintiff's complaint are such that they are a condition precedent to the duty of LSG Sky Chef to indemnify NWA for the principal plaintiff's allegations of injury." *Id.* at ¶ 25.

Plaintiff alleges that Northwest breached its duty to make reasonable and necessary inspections of its catering equipment; maintain its catering equipment in a safe and reasonable manner; repair its catering equipment; provide rules and regulations to its employees regarding inspection; and provide rules and regulations regarding use of damaged or defective equipment. Pl. 1st Amd. Cmplt. at ¶ 25 (a)-(e). Plaintiff also asserts that Northwest negligently allowed Sky Chefs' employees to use damaged, defective and dangerous catering equipment, and otherwise breached its duty to insure that its catering equipment was reasonably safe. *Id.* at ¶ 25 (f)-(g).

In support of Count III of its third party claim, Northwest appears to rely on paragraphs 28.1.1 and 28.1.3 of the contract, which the Court has determined do

provide for indemnification under certain circumstances.[5]

### D. *Sky Chefs' Motion for Summary Judgment*

Sky Chefs asserts five arguments in this motion: (1) Northwest was obligated to supply Sky Chefs with the proper equipment; (2) the contract limits Northwest's damages for boarding damaged equipment; (3) Sky Chefs is not required to indemnify Northwest under these circumstances; (4) Northwest cannot recover for restitution; and, (5) Sky Chefs has not breached any contractual obligation to provide liability insurance coverage. Each argument will be addressed.

      1.    Northwest's Obligation to Supply Sky Chefs with Proper Equipment

Sky Chefs argues:

> Under the terms of the Catering Agreement, Northwest is obligated to supply Sky Chefs with equipment to enable Sky Chefs to provide catering services to Northwest's passengers. Sky Chefs has no obligation to determine the appropriate equipment for each aircraft, rather that obligation belongs to Northwest as the owner and supplier of the equipment. Sky Chefs is obligated to allow Northwest access to its facilities to remove Northwest's equipment. And, Sky Chefs does not have the right to determine whether equipment should be removed from any of its facilities.
>
> In the underlying action, Mrs. Bradley alleged she was injured while loading a mix kit into a Northwest DC-9 aircraft. *See* First Amended Complaint, p. 3, ¶11. Specifically, Mrs. Bradley alleged that because the size of the door to the DC-9 aircraft was too small to accommodate a rolling cart, she was required to manually lift the fully loaded mix kit into the aircraft. First Amended Complaint, pp. 3-4, ¶ 12. Further, she claimed that she was injured while placing the mix kit onto the shelf where it was stored, because she had to "twist and wiggle the mix kit in order to place it into the small space provided for it." *Id.* at p. 4, ¶ 16-17.
>
> Plaintiff alleges that the mix kit that she was lifting had a broken door. *See* First Amended Complaint, p. 4, ¶ 13. She does not claim that the broken door caused her injury. Rather, her allegations specifically state that she was injured while placing the mix kit into the "small space." Ms. Bradley's allegations

---

[5] Neither the complaint nor Northwest's brief state the specific indemnification provision upon which the airline relies. The broad wording of the complaint could state a claim under paragraphs 28.1.1 and 28.1.3.

implicate Northwest's obligations under the Catering Agreement to provide the appropriate equipment to Sky Chefs to perform its catering services for the DC-9.

Sky Chefs Mo. at pp. 16-17. This argument is insufficient to support summary judgment. A question of fact remains as to which entity had the duty to ensure the safety of the equipment. Northwest correctly points out that Sky Chefs also had an obligation relating to the safety and functioning of the equipment. Pursuant to the contract,

> Seller will use its reasonable best efforts to inspect the equipment before loading food and/or service items thereon to ensure the equipment meets buyer's safety and operational requirements. Seller, in accordance with commonly accepted catering practices, will remove damaged or inoperable equipment and send it back to buyer-directed locations. Seller will report to buyer, upon buyer's advance written request, the number of pieces of equipment by type that fail to meet either one of the above requirements which have been identified in Attachment C. Seller will provide checklist to its staff to ensure satisfactory condition of equipment. Buyer has the right to review this checklist and the seller's test results and make recommendations based on buyer's written safety and operational standards for equipment.

Catering Agreement, ¶ 20.6 Condition of Equipment, p. 22.

Based on the contract, it appears that, minimally, the obligation relating to the safety of the equipment was shared by Northwest and Sky Chefs, if not entirely borne by Sky Chefs. If Sky Chefs' sole negligence caused Plaintiff's injury, Northwest may be entitled to indemnification pursuant to paragraphs 28.1.1 and 28.1.3 of the Agreement.

### 2. Limited Damages For Boarding Damaged Equipment

Sky Chefs asserts that Northwest has limited its damages under this claim because paragraph 20.7 of the contract states:

> 20.7 Buyer's Remedies If Seller Boards Damaged/Unclean Equipment. In the event Seller boards equipment known to it to be damaged or unclean. Seller will credit Buyer per documented incident as described In Attachment I. Provided, however, Seller will not be charged for boarding damaged equipment to the

extent that it is reasonably attributable to Buyer's failure to provide an adequate supply of Buyer owned equipment. Seller shall promptly advise Buyer of any equipment deficiencies. (Equipment includes, but is not limited to, carts, carriers, glassware, cutlery, linens, etc.).

Catering Agreement at ¶ 20.7.

Under Minnesota law, "where there is an apparent conflict between two clauses or provisions of a contract, it is the court's duty to find harmony between [the provisions] and to reconcile them if possible." *Oster v. Medtronic, Inc.*, 428 N.W.2d 116,119 (Minn.App. 1988). "Each and every provision of a contract must be given effect if that can consistently and reasonably be done, and all clauses and provisions should be construed to harmonize with one another." *Id.* "The court must consider the overall purpose of the contract, as well as its terms. The contract's terms will not be construed so as to lead to a harsh or absurd result." *Advantage Consulting Group, Ltd. v. ADT Security Systems*, 306 F.3d 582, 585 (8th Cir. 2002)(internal citiations omitted).

To find that Sky Chefs' indemnity obligations are controlled by paragraph 20.7 would severely hinder the purpose and intent of paragraph 28.1. However, allowing indemnification in the face of paragraph 20.7 hinders neither provision. Thus, even if paragraph 20.7 is applicable, it does not affect Sky Chefs' duty to indemnify Northwest. Allowing indemnification harmonizes the provisions.

Also, Sky Chefs' construction of the contract leads to absurd and harsh results. Indeed, what Sky Chefs is arguing would unduly reward Sky Chefs' negligence (by barring indemnification of Northwest losses as a result of Sky Chefs' negligence) and unfairly penalize Northwest (by forcing it to absorb the losses caused Sky Chefs' negligence). The indemnity provision is not limited by paragraph 20.7.

      3.      Sky Chefs' Indemnification of Northwest

            a.      A Genuine Issue of Material Fact Remains As to Whether Northwest May Recover Pursuant to Paragraph 28.1.1

Sky Chefs contends that it has not breached the Catering Agreement, and, therefore, Northwest is not entitled to indemnification pursuant to paragraph 28.1.1 of the Catering Agreement. Paragraph 28.1.1 states indemnification is available for "[a]ny breach of the respective [Sky Chefs and Northwest's] representations, warranties, covenants or agreements made in this agreement." On the other hand, Northwest argues that the Catering Agreement was breached by Sky Chefs' "failure to inspect [and] failure to notify Northwest of any needed repairs." Northwest Cross Mo. at 7. Additionally, Northwest asserts that the Catering Agreement requires Sky Chefs to use the "equipment in an efficient, safe and cost-effective manner," and that Sky Chefs contracted to "remove damaged or inoperable equipment" from service. Catering Agreement at ¶ 20.1 and 20.6.[6]

For reasons more fully discussed, *supra* with regard to Sky Chefs and *infra* with regard to Northwest, the Court denies both motions for summary judgment based on breach of contract as related to the indemnification clause. Therefore, if it is determined that a breach occurred, Northwest may be entitled to indemnification under Paragraph 28.1.1 of the Catering Agreement.

Northwest's indemnification under Paragraph 28.1.1 is limited. The provision

---

[6] Northwest also asserts that under the contract, Sky Chefs agreed to "provide preventative maintenance and repair work on the flight kitchens' systems and components and the items used therein." Northwest Cross Mo. at p. 6. However, Northwest fails to direct the Court to the relevant provision of the contract which support this assertion.

allows for indemnification when there is any breach of the <u>respective</u> representations, warranties, covenants or agreements made in this agreement. Thus, if Northwest was also negligent under the agreement and breached, Northwest may only be indemnified if Sky Chefs breached as well. Northwest is not to be indemnified for its own negligence or breach.

                          b.       A Genuine Issue of Material Fact Remains As to Whether Northwest May Recover Pursuant to Paragraph 28.1.3

Pursuant to paragraph 28.1.3, indemnification is provided for "any death, personal injury, or property damage caused by their [Sky Chefs and Northwest's] respective negligence."

Sky Chefs asserts that this provision means that Northwest and Sky Chefs' obligations cannot be placed on the other by virtue of joint and several liability. Therefore, Sky Chefs argues that Northwest's claim for indemnification under the contract should be rejected because, as a matter law, Northwest cannot be required to pay for injuries caused by Sky Chefs. Specifically, Sky Chefs points to Mich. Comp. Laws § 600.2956, which applies to Plaintiff's underlying claim:

> Except as provided in section 6304, in an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each defendant for damages is several only and is not joint ...

*See Estate of Smith v. Michigan*, 256 F.Supp.2d 704, 712 (E.D. Mich. 2003)(Roberts, J.) ("MCL 600.2956 provides that in tort actions seeking damages for personal injury, property damage, or wrongful death, liability of each defendant for damages is several only, and not joint... As such, any state law claim against each defendant may only result in several liability."); *see also McCoy v. Monroe Park West Assocs.*, 44 F.Supp.2d

910, 913 (E.D. Mich 1999)("The statutes dealing with the abolition of joint liability require that plaintiff prove the liability of each tortfeasor. Then damages are allocated in proportion to the defendant's percentage of fault.").

The Court agrees with Sky Chefs' assessment of the law. However, this finding does not warrant dismissal of Count III. The indemnification clause also provides indemnification for attorney fees and costs. It is possible that a jury could find zero fault on the part of Northwest. Then, Sky Chefs would likely be required to indemnify Northwest for attorney fees and costs incurred during the course of the litigation. Accordingly, Northwest has sufficiently stated a claim pursuant to paragraph 28.1.3 of the Catering Agreement. However, such indemnification will be limited to all or some portion of Northwest's costs and attorney fees.

      c. Additional Briefing Required On Northwest's Potential Recovery If A Jury Finds Both Parties Negligent

As noted, *supra*, if a jury finds zero fault on the part of Northwest, Sky Chefs would likely be required to indemnify Northwest for attorney fees and costs incurred during the course of the litigation. The converse is also true: if a jury finds 100 percent fault on the part of Northwest, then Sky Chefs would not be required to indemnify Northwest. Outside of these scenarios, the outcome is less clear. The parties should brief the issue of how indemnification should be determined if a jury assesses some percentage of fault to <u>both</u> Northwest and Sky Chefs. Sky Chefs shall file its brief by 5:00 PM on July 26. Northwest shall file a response by Noon on July 29. Sky Chefs may file a reply by Noon on August 1. Both parties should serve their documents by fax or courier on the day in which the documents are filed with the Court.

      4.      Northwest's Entitlement to Restitution

Sky Chefs asserts that Count V, Northwest's claim for restitution for breach of contract, is a rephrasing of its request for indemnity. The Court agrees.

Under Minnesota law, indemnity is an equitable remedy for restitution. *Blomgren v. Marshall Mgmt. Servs., Inc.*, 483 N.W.2d 504 (Minn. App. 1992); *see also Hendrickson v. Minn. Power & Light Co.*, 258 Minn. 368, 371 (1960). Indemnity arises out of a contractual relationship, either expressed or implied by law, which "requires one party to reimburse the other entirely." *Id.* Therefore, if claims for indemnification and restitution rely on the same facts, the indemnitee may not recover under both theories.

Here, Northwest alleges:

31.    That should NWA become liable in damages to principal plaintiff, Rebecca Bradley, then those damages would NWA hereby may sustain would be due to the negligence of LSG Sky Chef and the breach of their contractual obligation.

32.    That, therefore, NWA will be entitled to restitution of those damages from LSG Sky Chef which are found to be due to LSG Sky Chef's breach of its contractual obligations and duties as set forth above, whether based on the theories of implied contractual indemnification or simple breach of contract. either implied or expressed.

Third Pty. Cmplt. at ¶¶ 31-32.

Northwest's claim for restitution is essentially a rephrasing of its claim for indemnification. Therefore, Count IV will be dismissed.

      5.      Sky Chefs' Obligation to Provide Liability Insurance Coverage

Sky Chefs' acknowledges its obligation to maintain insurance coverage naming Northwest as an additional insured to the extent of Seller's indemnification or other obligations under the contract. Sky Chefs' Mo. at p. 22; Agreement at ¶ 27.1.3. Count

V of Northwest's Third Party Claim alleges breach of this obligation and seeks attorney fees and costs in defending the causes of action filed by Plaintiff.  Third Pty. Cmplt. at ¶¶ 34-35.

Sky Chefs seeks dismissal of this Count, arguing: (1) it has proven liability insurance exists for the covered period through a certificate of insurance submitted with its motion, (2) Sky Chefs is not required to indemnify Northwest as a matter of law, and (3) Northwest has offered no evidence that Sky Chefs has breached its obligation to provide insurance.  Northwest responds that Sky Chefs refused to produce a certified copy of the insurance policy as requested under the Federal Rules of Civil Procedure.

Pursuant to Federal Rule of Civil Procedure 56(f), if a party is unable to present facts essential to justify the party's opposition to a motion for summary judgment because of limited, or a lack of, discovery, the party must file an affidavit detailing the discovery needed, or, in the alternative, the party may file a motion for additional discovery.  *Wallin v. Norman*, 317 F.3d 558, 564 (6th Cir. 2003) *(citing Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 627 (6th Cir. 2002)("[T]he non-movant *must* file an affidavit pursuant to Fed.R.Civ.P. 56(f) that details the discovery needed, or file a motion for additional discovery.") (emphasis added).

Northwest may not rely on the allegations in its complaint to rebut a motion for summary judgment, and has failed to submit an affidavit outlining the discovery needed or file a motion for additional discovery as required pursuant to Fed.R.Civ.P. 56(f).  *See Wallin*, 317 F.3d at 564.  Northwest has failed to provide sufficient evidence to suggest that a material question of fact exists as to whether Sky Chefs breached its obligation to provide insurance.  Therefore, Sky Chefs' motion for summary judgment on Count V is

granted.

### E. *Northwest's Motion for Summary Judgment*

In support of its motion for summary judgment on its third party claim of indemnification against Sky Chefs, Northwest asserts:

> Plaintiff has no evidence to suggest Northwest Airlines had any contact with the mix kit, notice of the mix kit defect as alleged, or caused her to injure herself. Rather her testimony is such that when she received the mix kit on the morning of the injury it had been supplied to her by her employer and third-party Defendant Sky Chefs Inc., that it had been loaded with product provided by her employer and placed on the dock for her to load onto her truck by her employer. Upon driving her Sky Chefs' truck to a Northwest Airlines DC9/10 (still unidentified) she attempted to offload the mix kit and place it into the Northwest Airlines' galley. At this point she first noticed the defect allegedly present with the hinge on the mix kit. Despite noticing this defect she continued to attempt to place the kit into the aircraft galley...
> Rebecca Bradley testified specifically as it relates to the negligence of LSG Sky Chef and her deposition transcript is attached as Exhibit C.

Northwest Cross Mo. Summ. J. at pp. 8-9.

Northwest's motion for summary judgment fails. The moving party seeking summary judgment bears the initial burden of showing that there is no genuine issue of material fact. *Snyder v. AG Trucking Co.*, 57 F.3d 484, 488 (6th Cir. 1995). Northwest avers that there is no evidence that it knew of the defective hinge and despite noticing the defective hinge, Plaintiff, an employee of Sky Chefs, continued to attempt to place the kit on the airplane. However, the deposition testimony relied on by Northwest fails to fully support these assertions. While the testimony does suggest that Sky Chefs' employees could have taken the cart out of service if it was broken, and Plaintiff should have notified her manager if it was broken, the testimony does not support an assertion that Sky Chefs or Plaintiff knew of the defect before the injury. Therefore, a genuine issue of material fact remains as to whether Sky Chefs breach the Catering Agreement

and Northwest's motion is denied.

## V. CONCLUSION

For the reasons stated, the Court will GRANT, in part, and DENY, in part, Sky Chefs Motion for Judgment on the Pleading and Motion for Summary Judgment. The Court DENIES Northwest's Cross Motion for Summary Judgment. Accordingly, Counts I, II, IV, and V of the Third Party Complaint are DISMISSED. Count III, which seeks indemnification based on the Catering Agreement will proceed to trial. However, Sky Chefs and Northwest are to file additional briefing on the issue of indemnification as outlined in Section IV(D)(3)(c) of this Opinion and Order.

**IT IS SO ORDERED.**

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: July 21, 2005

> The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on July 21, 2005.
>
> s/Linda Vertriest
> Deputy Clerk